UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE PEARSON,

       Plaintiff,                                  Hon. Richard Alan Enslen

v.                                                    Case No. 1:07-CV-509

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age on the date of the ALJ's decision.  (Tr. 21, 46).  He successfully completed high school and worked previously as a machine operator and security guard.  (Tr. 67, 72-74).

Plaintiff applied for benefits on April 12, 2004, alleging that he had been disabled since March 1, 2004, due to impairments in his arms, lower back, right knee, and right shoulder, as well as a limited ability to read and write.  (Tr. 46-48, 61).  Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 22-45).  On July 14, 2006, Plaintiff appeared before ALJ Michael Finnie, with testimony being offered by Plaintiff and vocational expert, Dr. James Lozer.  (Tr. 300-46).  In a written decision dated November 22, 2006, the ALJ determined that Plaintiff was not disabled.  (Tr. 15-21).  The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter.  (Tr. 5-9).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**

On December 6, 1988, Plaintiff underwent a semi-hemilaminectomy of L4 and L5 with decompression of the left L5 and S1 nerve roots. (Tr. 222). Treatment notes dated March 1, 1989, reveal that Plaintiff had returned to work "operating a press" and that he was "tolerating this very well." (Tr. 223).

On November 24, 1998, Plaintiff underwent an epicondylectomy on his left elbow to treat left lateral epicondylitis. (Tr. 230-31).

On March 14, 2002, Plaintiff participated in a stress echocardiographic examination, the results of which were "normal" with no evidence of "inducible ischemia." (Tr. 189-90). Plaintiff exhibited "good exercise tolerance" and "normal blood pressure response." (Tr. 190).

On May 12, 2003, Plaintiff was examined at A.F. Associates Family Medicine. (Tr. 168). Plaintiff reported experiencing lower back pain which radiated into his left lower extremity. (Tr. 168). An examination of his spine revealed tenderness and straight leg raising was positive on the left. (Tr. 168). Plaintiff was able to heel/toe walk and Patrick's sign[1] and Lasegue's sign[2] were both negative. (Tr. 168). Plaintiff was instructed to participate in physical therapy. (Tr. 168).

On May 18, 2003, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "marked" degenerative changes at L5-S1 with "crowding of the left neural foramen." (Tr. 141). There was, however, no evidence of disc protrusion, spinal stenosis, fracture, or malignancy. (Tr. 141).

---

[1] Patrick's test is used to determine whether a patient suffers from arthritis of the hip joint. This test is also referred to as Fabere's sign. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-81 (Matthew Bender) (1996).

[2] Lasegue's sign is a sign which is present in several abnormal conditions, such as a disorder in the lower vertebrae of the spine, meningitis, and sciatica. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* L-42 (Matthew Bender) (1996).

On June 6, 2003, Plaintiff was examined by Dr. Farook Kidwai. (Tr. 143-45). Plaintiff reported that he was experiencing pain in his lower back and left lower extremity. (Tr. 143). An examination of Plaintiff's cervical spine revealed "moderate" paraspinal spasm. (Tr. 144). Straight leg raising was positive on the left. (Tr. 144). The results of a EMG/NCT examination revealed no evidence of segmental or compression neuropathy. (Tr. 142). The doctor recommended that Plaintiff receive a series of lumbar peridural injections. (Tr. 142, 145). Plaintiff was instructed to discontinue (1) repetitive bending and twisting of his back, (2) prolonged sitting, standing, or walking, (3) driving for longer than 30 minutes, and (4) lifting more than 20 pounds. (Tr. 145).

X-rays of Plaintiff's lumbar spine, taken on June 10, 2003, revealed degenerative changes at L4-L5 and L5-S1, but "no signs of instability." (Tr. 177).

On September 3, 2003, Plaintiff received his initial pain injection. (Tr. 159-60). Treatment notes, dated October 1, 2003, reveal that Plaintiff experienced "significant improvement" following this treatment. (Tr. 158). Plaintiff reported that he was "happy with his results" and "does not believe he needs treatment at this time." (Tr. 158).

On May 20, 2004, Plaintiff was examined by Dr. John Boston. (Tr. 196-99). Plaintiff reported that he was experiencing pain in his lower back, right knee, right shoulder, and both elbows. (Tr. 196). Plaintiff reported that he can stand for 10 minutes, walk for 30 minutes, and experiences "no real problems" sitting if he has a "soft seat." (Tr. 196). Plaintiff reported that he can "constantly" lift 10 pounds, "frequently" lift 20 pounds, and "occasionally" lift 30 pounds. (Tr. 196). An examination of Plaintiff's spine revealed normal range of motion with no evidence of tenderness or spasm. (Tr. 197). Straight leg raising was negative. (Tr. 197). Plaintiff exhibited no difficulty squatting, heel/toe walking, or getting on and off the examination table. (Tr. 197). An

5

examination of Plaintiff's upper extremities revealed normal range of motion and 5/5 strength. (Tr. 198). An examination of Plaintiff's knees revealed normal range of motion. (Tr. 199).

When examined on November 11, 2004, Plaintiff reported that he "has no complaints or worries." (Tr. 276). Plaintiff reported that he was "putsing [sic] around the house, doing a little fishing, riding his motorcycle, and taking pictures part time." (Tr. 276). Noting that Plaintiff was deconditioned, the doctor "encouraged" Plaintiff to improve his fitness level. (Tr. 276).

Treatment notes dated November 7, 2005, reveal that Plaintiff was "doing pretty well and enjoying himself." (Tr. 275). Plaintiff reported that he "has been doing about the same activities as usual, fishing and running his new Harley motorcycle." (Tr. 275). The doctor reported that Plaintiff was "healthy" and "doing quite well." (Tr. 275).

On March 20, 2006, Plaintiff participated in the Wechsler Adult Intelligence Scale-III, the results of which indicated that Plaintiff possesses a verbal IQ of 65, a performance IQ of 72, and a full-scale IQ of 65. (Tr. 271). Plaintiff's performance correlates to "the upper limits of the mentally retarded range of intelligence." (Tr. 271-72).

On May 31, 2006, Plaintiff completed a questionnaire regarding his activities. (Tr. 123-28). Plaintiff reported that he drives, watches television, visits friends, talks on the telephone, cleans his apartment, and goes out to eat every day. (Tr. 123, 125-26). Plaintiff reported that he also shops and pays his bills. (Tr. 125-26). Plaintiff further reported that he does not require any assistance with these activities. (Tr. 126).

On August 15, 2006, Plaintiff reported that he "spends most of his time" fishing, working on his motorcycles, taking care of his house, and riding motorcycles. (Tr. 287).

At the administrative hearing, Plaintiff testified that he can lift 10 pounds frequently and 20 pounds occasionally. (Tr. 314-15). Plaintiff reported that he can sit for 30 minutes, but cannot walk more than one-sixteenth of one mile. (Tr. 316-17). Plaintiff also reported that he cannot stand/walk or sit for more than two hours each during an 8-hour workday. (Tr. 317).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the lumbar spine status post laminectomy; (2) right shoulder pain status post surgery; (3) bilateral epicondylitis status post surgery; and (4) borderline intellectual functioning. (Tr. 17). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ determined that despite these impairments, Plaintiff retained the ability to perform his past relevant work. (Tr. 18-21). The ALJ further determined that even if Plaintiff was unable to perform his past relevant work, there also existed a significant number of jobs which he could perform despite his limitations. (Tr. 18-21). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff bears the burden of demonstrating his entitlement to benefits, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual

functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work activities subject to the following limitations: (1) he can lift 20 pounds occasionally and 10 pounds frequently; (2) he can sit for 6 hours during an 8-hour workday; (3) he can stand and/or walk for 6 hours during an 8-hour workday; (4) he can only occasionally climb ramps or stairs; and (5) he can only occasionally stoop, kneel, crouch, or crawl. (Tr. 18).  After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.  A vocational expert testified that an individual with Plaintiff's RFC would be able to perform Plaintiff's past relevant work as a security guard. (Tr. 339-40).  The vocational expert further testified that there existed an additional 8,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. Tr. 340-41).  Accordingly, the ALJ concluded that Plaintiff was not disabled.

      a. Plaintiff does not meet the requirements of section 12.05 of the Listing of Impairments

Section 12.05 of the Listing of Impairments (Mental Retardation) provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>   1. Marked restriction of activities of daily living; or
>
>   2. Marked difficulties in maintaining social functioning; or
>
>   3. Marked difficulties in maintaining concentration, persistence or pace; or
>
>   4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2006).

Plaintiff asserts that he satisfies the requirements of section 12.05(C) of this particular Listing. The ALJ found that Plaintiff did not meet the requirements of this listing because "although [Plaintiff] has a full scale IQ which is between 60 and 70 (65) he has a work history of well over 20 years and no evidence of significant deficits in adaptive functioning." (Tr. 18).

As noted above, Plaintiff's performance on the Weschler Adult Intelligence Scale revealed that he possesses a verbal IQ of 65, a performance IQ of 72, and a full-scale IQ of 65. That this test was not administered until well after Plaintiff attained the age of 22 is of no consequence. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (in analyzing a claim under section 12.05, the court concluded that "absent evidence of sudden trauma that can cause retardation," IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life). Moreover, while Plaintiff's other impairments are not disabling in severity, they certainly impose additional and significant work-related limitations.

While Plaintiff satisfies the criteria articulated in subsection (C), he must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that he experienced deficits in adaptive behavior prior to the age of 22. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22).

The record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior prior to the age of 22. Moreover, Plaintiff's behavior and activities fail to support such a conclusion. As the ALJ recognized, Plaintiff has a lengthy and successful work history, indicating that he did not experience deficiencies in adaptive behavior prior to age 22, or thereafter for that matter. *See Burrell v. Comm. of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an

11

interest in his household, and enjoys apparent satisfactory relationships with family members"); *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (claimant with a 10th grade education, who worked as an oil-changer, not disabled under section 12.05); *Williams v. Sullivan*, 970 F.2d 1178, 1185 (3rd Cir. 1992) (claim of mental retardation contradicted by the fact that claimant was able to "maintain a job for most of his adult life"); 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(D) (recognizing that when evaluating mental disorders, a claimant's work history is "particularly useful" in assessing the extent of impairment); *see also*, *Crayton v. Callahan*, 120 F.3d 1217, 1219-20 (11th Cir. 1997) ("a valid IQ score need not be conclusive of mental retardation, where the IQ score is inconsistent with other evidence in the record concerning the claimant's daily activities and behavior") (citation omitted).

Accordingly, the Court concludes that Plaintiff has not presented evidence from which it can reasonably be determined that he has experienced deficiencies in adaptive behavior. Thus, Plaintiff has not met his burden in establishing that he satisfies the requirements of section 12.05 of the Listing of Impairments. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002) (the burden rests with the claimant to establish that he meets a listed impairment).

  b. The ALJ's Determination at Step Four of the Sequential Process

As noted above, at step four of the sequential process the ALJ determined that Plaintiff, despite his impairments, retained the ability to perform his past relevant work as a machine operator and security guard. Plaintiff asserts this conclusion is not supported by the evidence.

In concluding that Plaintiff was able to perform his past relevant work as a machine operator and security guard, the ALJ expressly relied on the testimony of the vocational expert. (Tr. 21). A review of the vocational expert's testimony, however, reveals that such does not support the ALJ's conclusion. When asked whether a person with Plaintiff's RFC could perform Plaintiff's past relevant work, the vocational expert testified that such a person "could do the security guard job, obviously as [Plaintiff] did it." (Tr. 340). The vocational expert further observed, however, that Plaintiff would not be able to perform the job of security guard "as it's normally done." (Tr. 340). As for Plaintiff's past relevant work as a machine operator, the vocational expert never testified (or even suggested) that Plaintiff, given his limitations, could return to such work. In short, there does not exist substantial evidence to support the ALJ's conclusion that Plaintiff retains the ability to perform his past relevant work. This shortcoming, however, does not alter the outcome.

At step five of the sequential process the burden of proof shifts to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by

the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.

The vocational expert testified that there existed approximately 8,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 340-41). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold). Accordingly, even though the ALJ's determination at step four of the sequential process is not supported by substantial evidence, his decision at step five of the sequential process is supported by substantial evidence.

### c. The ALJ Properly Evaluated Plaintiff's Credibility

The ALJ discounted Plaintiff's credibility, finding that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." (Tr. 20). Plaintiff asserts that the ALJ failed to give proper weight to his testimony regarding his physical limitations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d

525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must

stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

As the ALJ properly observed, Plaintiff's various reported activities are inconsistent with his allegations of disabling pain and limitation. (Tr. 20). The ALJ also noted that Plaintiff's medical history "does not establish a pattern of continuing severity," moreover, "[h]e is not prescribed narcotic pain medication and has infrequent or irregular treatment." (Tr. 20). As the ALJ further recognized, "no physician has indicated that [Plaintiff] has significant functional restrictions exceeding [his] residual functional capacity." (Tr. 20). In sum, Plaintiff's subjective allegations are contradicted by the objective medical evidence, Plaintiff's treatment history, and Plaintiff's reported activities. While the Court does not dispute that Plaintiff's impairments impose on him a certain degree of limitation, the ALJ's credibility determination is nonetheless supported by substantial evidence.

d. The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question. While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 8,000 such jobs. Because

there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: May 19, 2008   /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge